# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. _____ |
| v. | ) ) JURY TRIAL DEMANDED |
| ANIXTER INTERNATIONAL INC., SAMUEL ZELL, LORD JAMES BLYTH, FREDERIC F. BRACE, LINDA WALKER BYNOE, ROBERT J. ECK, WILLIAM A. GALVIN, F. PHILIP HANDY, MELVYN N. KLEIN, JAMIE MOFFITT, GEORGE MUÑOZ, SCOTT R. PEPPET, VALARIE L. SHEPPARD, WILLIAM S. SIMON, and CHARLES M. SWOBODA, | ) ) CLASS ACTION ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on October 30, 2019 (the "Proposed Transaction"), pursuant to which Anixter International Inc. ("Anixter" or the "Company") will be acquired by affiliates of Clayton, Dubilier & Rice.

2.      On October 30, 2019, Anixter's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (as amended, the "Merger Agreement") with CD&R Arrow Parent, LLC ("Parent") and CD&R Arrow Merger Sub, Inc. ("Merger Sub," and together with Parent, "CD&R"). Pursuant to the terms of the Merger Agreement, Anixter's stockholders will receive $82.50 in cash for each share of Anixter common

stock they own.

3. On December 4, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Anixter common stock.

9. Defendant Anixter is a Delaware corporation and maintains its principal executive offices at 2301 Patriot Boulevard, Glenview, Illinois 60026. Anixter's common stock is traded on

2

the New York Stock Exchange under the ticker symbol "AXE."

10.     Defendant Samuel Zell is Chairman of the Board of the Company.

11.     Defendant Lord James Blyth is a director of the Company.

12.     Defendant Frederic F. Brace is a director of the Company.

13.     Defendant Linda Walker Bynoe is a director of the Company.

14.     Defendant Robert J. Eck is a director of the Company.

15.     Defendant William A. Galvin is President, Chief Executive Officer, and a director

of the Company.

16.     Defendant F. Philip Handy is a director of the Company.

17.     Defendant Melvyn N. Klein is a director of the Company.

18.     Defendant Jamie Moffitt is a director of the Company.

19.     Defendant George Muñoz is a director of the Company.

20.     Defendant Scott R. Peppet is a director of the Company.

21.     Defendant Valarie L. Sheppard is a director of the Company.

22.     Defendant William S. Simon is a director of the Company.

23.     Defendant Charles M. Swoboda is a director of the Company.

24.     The defendants identified in paragraphs 10 through 23 are collectively referred to

herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action on behalf of himself and the other public

stockholders of Anixter (the "Class"). Excluded from the Class are defendants herein and any

person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

26.     This action is properly maintainable as a class action.

27.     The Class is so numerous that joinder of all members is impracticable. As of October 28, 2019, there were approximately 33,827,906 shares of Anixter common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

28.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

29.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

30.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

31.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

32.     Anixter is a leading global distributor of Network & Security Solutions, Electrical

4

& Electronic Solutions, and Utility Power Solutions.

33.     On October 30, 2019, Anixter's Board caused the Company to enter into the Merger

Agreement with CD&R.

34.     Pursuant to the terms of the Merger Agreement, Anixter's stockholders will receive

$82.50 in cash for each share of Anixter common stock they own.

35.     According to the press release announcing the Proposed Transaction:

Anixter International Inc. (NYSE: AXE), a leading global distributor of Network & Security Solutions, Electrical & Electronic Solutions and Utility Power Solutions, has entered into a definitive agreement with an affiliate of Clayton, Dubilier & Rice ("CD&R") to be acquired in an all cash transaction valued at approximately $3.8 billion. The transaction will result in Anixter becoming a private company and is expected to close by the end of the first quarter of 2020. . . .

It is anticipated that upon completion of the transaction, Bill Galvin, along with other members of Anixter's executive management team, will continue to lead the company. Anixter's Board of Directors has unanimously approved the agreement with CD&R and recommends that Anixter stockholders approve the proposed merger and merger agreement. Anixter expects to hold a Special Meeting of Stockholders to consider and vote on the proposed merger and merger agreement as soon as practicable after the mailing of the proxy statement to its stockholders.

The transaction is subject to the approval of Anixter's stockholders, regulatory approvals and other customary closing conditions. The transaction has fully committed financing and is not subject to any condition with regard to the financing. Equity financing will be provided by Clayton, Dubilier & Rice Fund X, L.P., an approximately $10 billion pool of equity capital managed by CD&R; committed debt financing has been obtained from Bank of America, J.P. Morgan, Deutsche Bank Securities Inc. and Credit Suisse. Certain stockholders of Anixter, including entities associated with Sam Zell, Chairman of the Anixter Board, which own approximately 9% of the outstanding shares of Anixter common stock, have entered into a voting agreement with CD&R, pursuant to which they have agreed, among other things, to vote their shares of Anixter common stock in favor of the merger. . . .

Centerview Partners LLC is serving as lead financial advisor, Wells Fargo Securities, LLC is also serving as financial advisor and Sidley Austin LLP is serving as legal advisor to Anixter in connection with the transaction. BofA Securities, J.P. Morgan Securities LLC, Deutsche Bank Securities Inc. and Credit Suisse are serving as financial advisors to CD&R, and Debevoise & Plimpton LLP

is serving as legal advisor to CD&R.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

36.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed

Transaction.

37.     As set forth below, the Proxy Statement omits material information with respect to

the Proposed Transaction, which renders the Proxy Statement false and misleading.

38.     First, the Proxy Statement omits material information regarding the Company's

financial projections.

39.     The Proxy Statement fails to disclose: (i) all line items used to calculate (a)

Adjusted EBITDA and (b) Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP

metrics.

40.     The disclosure of projected financial information is material because it provides

stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial

advisor in support of its fairness opinion.

41.     Second, the Proxy Statement omits material information regarding the analyses

performed by the Company's financial advisors in connection with the Proposed Transaction,

Centerview Partners LLC ("Centerview") and Wells Fargo Securities, LLC ("Wells Fargo").

42.     With respect to Centerview's Discounted Cash Flow Analysis, the Proxy Statement

fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging

from 9.25% to 11.25%; (ii) the forecasted unlevered free cash flows of the Company for the period

beginning the fourth quarter of 2019 and ending in December 2024 and all underlying line items;

(iii) the terminal value of the Company; (iv) Centerview's basis for using perpetuity growth rates

ranging from 1.5% to 2.5%; (v) the Company's net debt; and (vi) the number of fully-diluted outstanding shares of Company common stock.

43.     With respect to Centerview's analysis of stock price targets for the shares of Company common stock, the Proxy Statement fails to disclose: (i) the price targets observed by Centerview in the analysis; and (ii) the sources thereof.

44.     With respect to Wells Fargo's Selected Public Companies Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Wells Fargo in the analysis.

45.     With respect to Wells Fargo's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Wells Fargo in the analysis.

46.     With respect to Wells Fargo's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 9.50% to 11.50%; (ii) the projected unlevered free cash flows of the Company for the three months ending December 31, 2019 through the year ending December 31, 2024 and all underlying line items; (iii) the terminal value of the Company; and (iv) Wells Fargo's basis for using perpetuity growth rates ranging from 1.50% to 2.5%.

47.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

48.     Third, the Proxy Statement omits material information regarding potential conflicts of interest of Wells Fargo.

49.     The Proxy Statement fails to disclose the amount of compensation Wells Fargo received for the past services it provided to the Company.

50.     The Proxy Statement also fails to disclose the amount of compensation Wells Fargo has received or will receive for acting as "an agent and a lender to one or more of the credit facilities of the Company, and CD&R and certain of its affiliates."

51.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

52.     Fourth, the Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

53.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

54.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Board; (iii) Reasons for Recommending the Adoption of the Merger Agreement; (iv) Forward-Looking Financial Information; and (v) Opinions of Our Financial Advisors.

55.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Anixter

56.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57.    The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Anixter is liable as the issuer of these statements.

58.    The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

59.    The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

60.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

61.    The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

62.    By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

63.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

64.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65.     The Individual Defendants acted as controlling persons of Anixter within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Anixter and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

66.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

67.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

68.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

69.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

11

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: December 9, 2019

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*